**Dated: June 2, 2021**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Chesapeake Energy Corporation, | ) | In the United States Bankruptcy Court |
| et al., | ) | for the Southern District of Texas |
| Debtors. | ) | Case No. 20-33233 |
| | ) | Ch. 11 |
| | ) | |
| | ) | Jointly Administered |
| CTF, Ltd., Ronald E. and Judy L. | ) | |
| Carlton, Richard A. and Catherine A. | ) | |
| Carlton, Bruce D. and Catherine B. | ) | |
| Carlton, and Lawrence J. Fechko, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 21-01021-JDL |
| | ) | |
| Encino Energy, L.L.C., and Encino | ) | |
| Acquisition Partners, L.L.C., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Encino Energy, L.L.C. and Encino | ) | |
| Acquisition Partners, L.L.C., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |

```
                                             )
v.                                           )
                                             )
Chesapeake Exploration, L.L.C.,              )
Chesapeake Appalachia, L.L.C.,               )
CHK Utica, L.L.C., MC Mineral Co.,           )
L.L.C., Chesapeake Plan Development          )
Co., L.L.C., Chesapeake Energy               )
Marketing, LLC.,  Chesapeake Royalty,        )
L.L.C., and MidCon Compression, LLC.,        )
                                             )
            Third-Party Defendants.          )
```

---

### ORDER GRANTING IN PART MOTION TO ABSTAIN, SEVER AND REMAND CASE AND GRANTING IN PART MOTION TO TRANSFER

### I. Introduction

In this drawn-out jurisdictional chess match,[1] Plaintiffs, royalty and mineral interest owners and lessors of oil and gas leases, seek to have their claims for breach of those leases against the assignee of the lessees remanded back to state court for trial.  In the state court the assignee, Encino Energy, L.L.C. ("Encino"), has asserted a third-party claim for indemnification from its assignor of the leases, Chesapeake Energy Corporation ("Chesapeake"),[2] for any amount for which it might be adjudged liable to the Plaintiffs.  Chesapeake filed bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas in June 2020 and confirmed its Chapter 11 Plan of Reorganization on January 16, 2021.  On March 3, 2021, pursuant to 28 U.S.C. § 1452(a), Chesapeake filed its *Notice of Removal* affecting removal of the state court

---

[1] Litigation between the parties started in the District Court of Beaver County, Oklahoma. Chesapeake and/or Encino unsuccessfully sought to remove the state court litigation to the United States District Court for the Western District of Oklahoma, the United States District Court for the Northern District of Ohio, and, challenging personal jurisdiction, sought extraordinary relief from the Oklahoma Supreme Court. The Supreme Court found that the District Court of Beaver County had personal jurisdiction in the case. *Encino Energy, L.L.C. et al v. The Honorable Jon Parsley*, Supreme Court of Oklahoma, Case No. 118,690.

[2] Unless otherwise specified, "Chesapeake" refers individually and collectively to the eight Debtors/Defendants named in the above case style.

action, including the Plaintiffs' claims against the assignee and the assignee's third-party claims against Chesapeake, to this Court in order to have this Court transfer the case to the United States District Court for the Southern District of Texas. [Doc. 1].

Chesapeake and Encino argue that this Court has jurisdiction over the State Court action because the Plaintiffs' claims against Encino and Encino's third-party claims against Chesapeake are related to the administration of Chesapeake's bankruptcy case. Chesapeake also seeks transfer of this case to the Southern District of Texas where Chesapeake's bankruptcy is pending. In response, Plaintiffs assert that the Federal Courts lack jurisdiction over the state law claims made by them against Encino arguing the claims are not related to the administration of the Chesapeake bankruptcy by virtue of Encino's claims for indemnification against Chesapeake.  As an alternative to remanding the entire case to State Court, Plaintiffs ask the Court to sever their action against Encino and remand its claims against Encino so it can proceed to trial.

Before the Court for consideration are four pleadings of the parties addressing Chesapeake's seeking transfer of  venue:

1. Chesapeake's *Third-Party Defendants' Amended Motion for Entry of an Order Transferring Venue to the United States Bankruptcy Court for the Southern District of Texas* [Doc. 15]:

2. *Plaintiffs' Response in Opposition to Third-Party Defendants' Amended Motion for Entry of an Order Transferring venue to the United States Bankruptcy Court for the Southern District of Texas* [Doc. 29];

3. *Chesapeake's Reply in Support of its Motion to Transfer to the Houston Bankruptcy Court* [Doc. 34]; and

4. *Plaintiffs' Corrected Response in Opposition to Third-Party Defendants' Amended Motion for Entry of an Order Transferring Venue to the United States District Court for the Southern District*

*of Texas* [Doc 35].

There are five pleadings related to the Plaintiffs' motion seeking remand of the case (or severing part of it) back to the State Court:

1. *Plaintiffs' Combined Motion to Abstain, Sever, and Remand* (the "Motion") [Doc. 16];

2. *Plaintiffs' Supplement to Plaintiffs' Combined Motion to Abstain, Sever, and Remand* [Doc. 17];

3. *Encino's Response to Plaintiffs' Combined Motion to Abstain, Sever, and Remand* (the "Response") [Doc. 31];

4. *Chesapeake's Opposition to Plaintiff's' Combined Motion to Abstain, Sever, and Remand* (the "Opposition") [Doc. 32]; and

5. *Reply in Support of Plaintiffs' Combined Motion to Abstain, Sever and Remand* ("Plaintiff's Reply") [Doc. 33].

## II. Background

1. The Plaintiffs are Ohio mineral owners that entered into oil and gas leases with Oklahoma-based Chesapeake in 2011. The leases gave Chesapeake the right to produce and sell oil and gas from the Plaintiffs' land. In exchange, Plaintiffs receive a royalty interest in the oil and gas produced and sold under leases. Chesapeake operated the wells drilled under the leases until 2018 when it assigned the leases to non-debtor Encino through its affiliates Encino Acquisition Partners, LLC, and BAP Ohio, LLC, (unless otherwise specified, collectively and individually referred to as "Encino"). The leases provided that with the consent of the lessors (here the Plaintiffs) the leases were assignable, but the assignor, here Chesapeake, remained liable for any breach notwithstanding the assignment.

2. In late 2017 and early 2018, Plaintiffs gave Chesapeake notice that it was underpaying royalties owed them under the leases, and that as a result the Leases were subject to termination.

4

On December 19, 2018, Plaintiffs filed suit for breach of the Leases against both Chesapeake and Encino in the District Court of Beaver County, Oklahoma ("Original Action").[3]

3.   On June 28, 2020, Chesapeake filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.[4] As a result of the bankruptcy, the state court action against Chesapeake was stayed; however, on August 27, 2020, the State Court ordered the case "severed," restyled it with only Encino as a defendant and permitted the Plaintiffs to proceed with their claims against Encino (the "Severed Action").[5]   In granting severance, the state court recognized the continuing application of the automatic stay of the original litigation against Chesapeake which remained pending after the severance order as to Encino.

4.   On February 9, 2021, Chesapeake emerged from bankruptcy.  On February 26, 2021, Chesapeake removed the Original Action, in which it was a defendant, to this Court.[6]

5.   On or about March 2, 2021, Encino filed an Answer and Third-Party Petition in the Severed Action against Chesapeake, naming as third-party defendants the eight newly-reorganized Chesapeake entities seeking indemnification for any liability under the Leases for which Encino might be adjudged liable to the Plaintiffs.  Encino's Third-Party Petition was based on "indemnity obligations" that the newly reorganized Chesapeake entities allegedly assumed in

---

[3] *CTF, Ltd., Judy L. Carlton, Richard A. and Catherine A. Carlton, Bruce D. and Catherine B. Carlton, and Lawrence J. Fechko v. Chesapeake Exploration, et al.,* Case No. CJ-2018-00026. That case as been removed to this Court

[4] Case No. 20-33233.

[5] *CTF, Ltd., et al. v. Encino Energy, L.L.C. et al.*, Case No. CJ-2018-00026-A (referred to herein as the "Severed Action").

[6] See *Notice of Removal*, Case No. 21-01019 [Doc.1].  The Bankruptcy Court in Houston had by order extended the 90 day period by which a state court case pending as of the date of the filing of the petition bankruptcy is required to be removed. Fed.R.Bankr.P. 9027.  Chesapeake's Notice of Removal was therefore timely. The Plaintiffs have not contested Chesapeake's removal of the "Original Action" against Chesapeake.

the "bankruptcy plan of reorganization, which was confirmed by entry of the confirmation order on January 16, 2021."[7]

6.  In the Severed Action remaining in State Court, on March 3, 2021, the Plaintiffs mailed to the State Court their *Emergency Motion to Sever and Stay Third-Party-Petition and for Entry of Proposed Scheduling Order* which sought the State Court to let Plaintiffs' claims against Encino only proceed to trial.  Apparently unbeknownst to Plaintiffs, on the same day, March 3, 2021, Chesapeake filed the Notice of Removal in this case.  On March 23, 2021, the Plaintiffs' *Motion to Sever and Stay Third-Party Petition* came on for hearing in the State Court.  The judge concluded that because of the Notice of Removal filed by Chesapeake on March 3, 2021, it lacked jurisdiction to consider Plaintiffs' Emergency Motion to Sever which would permit Plaintiffs to proceed only against defendant Encino.[8]

### III. Discussion

#### A.  Motion to Remand v. Motion to Transfer

As stated above, there are two separate motions before the Court: a motion to transfer venue pursuant to 28 U.S.C. §§ 1412 and 1404 filed by Chesapeake and (2) a motion by Plaintiffs for abstention, severance and/remand pursuant to 28 U.S.C. § 1452(a).  When a court is presented with both a motion to transfer venue and a motion to abstain and/or remand, it must decide which one to consider first.  Courts are divided on the issue.  Some courts hold that the bankruptcy court in which the bankruptcy is pending (usually referred to as the "home-court") is in the best position to determine the issues underlying motions to abstain or remand. See, e.g. *Aztec Industries, Inc. v. Standard Oil Co., (In re Aztec Industries, Inc.),* 84 B.R. 464, 467-68 (Bankr. N.D. Ohio 1987); *Kinney Systems, Inc. v. Intermet Realty Partnership (In re Convent Guardian Corp.),* 75 B.R. 346,

---

[7] [Doc. 1-5, Third-Party Petition at ¶ 13].

[8] Transcript of March 23, 2021 hearing, [Doc. 17, pg. 18).

6

347 (Bankr. E.D. Pa. 1987).  The cases which hold that the court should transfer a removed case

to the "home" bankruptcy court for a decision on abstention or remand are often referred to as

employing the "conduit" theory because they treat the local bankruptcy court as a mere conduit with

little role in determining where the removed lawsuit should be heard.  *Frelin v. Oakwood Homes*

*Corp.*, 292 B.R. 369, 379 (Bankr. E.D. Ark. 2003) (but holding that a motion  to remand should be

decided first).  These courts argue that the "home-court" is "more familiar with the pending

bankruptcy case and what may be required for its efficient administration."

Another line of case law holds that the bankruptcy court to which the state court lawsuit is

removed ("the local bankruptcy court") has the right to, and should, decide a pending motion to

abstain or remand before determining whether venue is proper in the home bankruptcy court.

*Work/Family Directions, Inc. v. Children's Discovery Centers, Inc.*, 223 B.R. 40 (1st Cir. BAP 1998)

("This Court should decide the jurisdictional issues raised.... If there is a jurisdictional defect and

the parties and the action are not properly before the Court, any action taken by the [transferee]

Court would be void,") (citing *Aztec Industries, Inc.,* 84 B.R. at 467); *Frelin,* 292 B.R. at 379; *In re*

*Scanware, Inc.*, 411 B.R. 889 (Bankr. S.D. Ga. 2009); *Gabel v. Engra, Inc. (In re Engra, Inc.),*86

B.R. 890, 893 (S.D. Tex. 1988); *Work/Family Directions, Inc. v. Children's Discovery Centers, Inc.*

*(In re Santa Clara County Child Care Consortium)*, 223 B.R. 40, 44 (1st Cir. BAP 1998) ("When

presented with a motion to remand a proceeding which has been removed from the state court, the

bankruptcy court must first evaluate whether the state court action was properly removed; that is,

it must determine whether it has subject matter jurisdiction over the proceeding.").

The Tenth Circuit has not addressed the issue, and courts within the Circuit are divided.

The majority of courts appear to hold that the jurisdictional issue of abstention or remand should

be heard first. See, e.g. *Ni Fuel Co., Inc. v. Jackson*, 257 B.R. 600, 611-12 (N.D. Okla. 2000)

(motion to abstain or remand is a jurisdictional issue which must be heard first) (quoting *Santa*

*Clara County Childcare Consortium.*, 223 B.R. at 44 (1ˢᵗ Cir. BAP 1998)); *Lemmings v. Second Chance Body Armor, Inc.,* 328 B.R. 228, 231 (N.D. Okla. 2005); *W. S. F.-World Sports Fans, LLC,* 367 B.R. 786, 791 (Bankr. D. N.M. 2007) ("When a proceeding has been removed to the bankruptcy court, and the party who removed the proceeding seeks to transfer venue while the opposing party seeks abstention and remand, the Court should first consider whether to abstain and remand before addressing the request to change venue."); *Maryland Casualty Co. v. Aselco, Inc.*, 223 B.R. 217, 219 n.1 (D. Kan. 1998) ("The Court is able to decide the legal issue concerning the applicability of the mandatory abstention provision without the benefit of the Maryland Bankruptcy Court's familiarity with Aselco's bankruptcy case."). But see, e.g., *City of Liberal, Kansas v. Trailmobile Corp.,* 316 B.R. 358, 363 (D. Kan. 2004); *Baker Hughes Oilfield Operations, Inc. v. Liberty Energy, LLC*, 2010 WL 1727930 (Bankr. E.D. Okla. 2010).

While the "conduit" theory would provide this Court the ability to quickly "pass the buck" to the Bankruptcy Court in Houston, the Court sees its duty otherwise and believes it should first decide the abstention/remand issue.  This is because "this line of cases provides strong statutory and logical support for the proposition that the local bankruptcy court should decide *'whether any* bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it."  *In re Scanware, Inc.,* 411 B.R. 889, 896 (Bankr. S.D. Ga. 2012) (quoting *Frelin v. Oakwood Homestead Corp*., 292 B.R. 369, 379 (Bankr. E.D. Ark. 2000); *Lone Star Industries, Inc. v. Liberty Mutual Insurance.,* 131 B.R. 269, 273 (D. Del. 1991) ("[A]s a logical and practical matter, the court should determine *whether an*y bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it.").   Additionally, 28 U.S.C. § 1452 provides removal to the District Court in which the removed civil action was pending rather than the district in which the bankruptcy case was filed, *and* provides that the court to which the civil action is removed may remand such cause of action on any equitable ground.  Furthermore, following the

8

conduit court theory, which results in automatic transfer of the bankruptcy case, assumes that venue is proper in the home bankruptcy court and renders the change of venue statutes meaningless. *Frelin,* 292 B.R. at 380; *Lone Star Industries, Inc.* 131 B.R. at 273.  Moreover, "the language of 28 U.S.C. § 1452(a) and § 1412 suggest a more active role for the local bankruptcy court." *Scanware,* 411 B.R. at 896.  The change of venue statute applicable to bankruptcy proceedings, § 1412, provides "that the transfer of a case from a local bankruptcy court to a home bankruptcy court is *discretionary rather than mandatory or automatic.*" (emphasis added). *Frelin,* at 380 *(quoting AG Industries, Inc. v. AK Steel Corp. (In re AG Industries, Inc.),* 279 B.R. 534, 540 (Bankr. S.D. Ohio 2002).  In sum, "the language of both § 1412 and § 1452(b) support that this court has the responsibility to make the decision of whether to transfer the case to the home bankruptcy court or remand the matter to state court." *AG industries Inc.*, 279 B.R. at 540. (citing *SBKC. Service Corp. v. 1111 Prospect Partners, L.P. (In re 1111 Prospect Partners, L.P.)*, 204 B.R. 222, 225-26 (Bankr. D. Kan.1996).  Accordingly, notwithstanding the fact that Chesapeake filed its Motion to Transfer first, the Court will decide whether it has jurisdiction for purposes of remand and/or abstention before determining whether venue is proper in Houston.

### B.  Removal and "Related To" Jurisdiction

It is well established that Federal Courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986).  A "strong presumption" against removal jurisdiction exists. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).  Because it is presumed that a cause lies outside this limited jurisdiction, the burden of establishing the contrary rests upon the party asserting jurisdiction.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83, 56 S.Ct. 780, 782 (1936).  Thus, although the Plaintiffs' Motion to Remand is before the Court, Chesapeake, as third-party defendant (supported by

Encino), seeking removal, it bears the burden of proving subject matter jurisdiction in this Court. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

Chesapeake has removed Plaintiffs' claims to this Court pursuant to 28 U.S.C. § 1452(a) which provides, in pertinent  part, that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district *where such civil action is pending, if such district court has jurisdiction of such claim* or cause of action under section 1334 of this title." (Emphasis added).[9]  Federal jurisdiction over removed actions may exist independent of the bankruptcy filing or as a result of it.  If jurisdiction exists independent of bankruptcy, it must be found on a specific grant of authority, i.e. federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under § 1332.  The parties have not pled a separate basis for federal jurisdiction for the state law contractual claims asserted in this case.

It is axiomatic that once a bankruptcy is filed, the federal courts, specifically the bankruptcy court, obtain jurisdiction over any claims against the debtor.  Encino's third-party petition against Chesapeake falls within this parameter.  Equally clear is the principle of claims by non-debtors against non-debtor parties are outside of the federal jurisdiction created by 28 U.S.C. §§ 157 and 1334, unless the action is "related to" the administration of the debtor's case.

This Court's basis for asserting jurisdiction over Plaintiffs' claims against Encino must exist by virtue of 28 U.S.C. § 1334(b) which lists the four types of cases over which federal courts have bankruptcy jurisdiction: (1) "cases under title 11"; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" cases under title 11. Inasmuch as the Plaintiffs' claims in the State Court Severed Action are neither against

---

[9]The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district."  28 U.S.C. § 157(a); Local Rule 84.1 of the Rules for the United States District Court for the Western District of Oklahoma (providing for the District Court referring all bankruptcy matters to this Court).

Chesapeake nor created or governed by provisions of the Bankruptcy Code, the parties agree, as does this Court, that the claims do not "arise in" or "arise under" the bankruptcy case. The entire basis for asserting this Court's jurisdiction over this proceeding hinges on the "related to" nature of Encino's third-party claim against Chesapeake and its alleged inextricable bond with the main demands of the Plaintiffs.

The Tenth Circuit in *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990), adopted the definition of "related to" jurisdiction set by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) as follows:

> Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could *alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate*. (Emphasis added) (Citations omitted).

Under this test, a bankruptcy court has jurisdiction to adjudicate claims between third parties where the outcome of the litigation could have a "conceivable effect" on the bankruptcy estate. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("A proceeding is 'related to' a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the 'outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy.' ") (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990)); see also *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493 (1995); *In re Otero County Hospital Association, Inc.*, 527 B.R. 719 (Bankr. D. N.M. 2015).

*Pacor,* although given great deference in almost all the Circuits, is not binding precedent

11

in any but the Third Circuit.  The Tenth Circuit is free to follow it or not, or make any modifications

it deems appropriate.  Most cases in the Tenth Circuit have recognized that *Gardner* did narrow

*Pacor*.  See e.g. *In re Eneco, Inc.*, 431 B.R. 308, 2010 WL 744351 (10th Cir. BAP 2010); *In re*

*Mordini*, 491 B.R. 567, 571 (Bankr. D. Colo. 2013) (*Gardner* "put a further limitation on the *Pacor*

test stating that 'the bankruptcy court lacks related jurisdiction to resolve controversies between

third parties which do not involve the debtor or his property unless the court cannot complete

administrative duties without resolving the controversy.'"); *In re Professional Home Health Care,*

*Inc.*, 2002 WL 1465914 (Bankr. D. Colo. 2002) (following *Gardner* in circumscribing the breadth

of the "could conceivably have any effect" language of *Pacor*).  Where, as here, Plaintiffs' claims

are being brought neither by nor against the debtor, "[a] case is 'related' to a bankruptcy when the

dispute 'affects the amount of property for distribution [i.e. the debtor's estate] or the allocation of

property among creditors.'"  *Matter of FedPak Systems, Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996).

Encino and Chesapeake assert that "related to" jurisdiction exists because of

contractual indemnification provisions contained in the Assignment, Bill of Sale and

Conveyance Agreement between Chesapeake and Encino [Doc. 33, pg. 34], not in the

Leases between the Plaintiffs and Encino, that may be triggered by the Plaintiffs' lawsuit.

"[A]n indemnification agreement between a defendant and a non-party bankrupt debtor

does not automatically supply the nexus necessary for the exercise of 'related to'

jurisdiction." *Steel Workers Pension Trust v. CitiGroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa.

2003).  "Even with an indemnification agreement, a court lacks 'related to' jurisdiction if the

non-debtor's recovery is predicated upon the results of a subsequent action for

indemnification." *In re W. R. Grace & Co.*, 412 B.R. 657, 667 (D. Del. 2009).  Only cases

where indemnification arises "independent of any additional legal actions" confer "related

12

to" jurisdiction. *Id.* "When indemnification is not automatic, 'related to' jurisdiction does not

exist." *Id.* at 668. Claims that serve as mere precursors to *potential* indemnification claims

do not confer "related to" jurisdiction. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir.

1984) (emphasis added).

In *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3rd Cir. 2002), *cert. denied*, 537

U.S. 1148, 123 S.Ct. 884 (2003), the Third Circuit further defined the terms "conceivable

effect on the bankruptcy estate" in establishing "related to" jurisdiction in an indemnification

context. In explaining its earlier holding in *Pacor*, the Court stated the following:

> They (the defendants) argue that the outcome of the Friction
> Product Claims could conceivably have an effect on Debtor's
> estate, because it is 'conceivable' that if the Friction Product
> Plaintiffs succeed in their claims against them, the Friction
> Product Defendants would seek indemnification and/or
> contribution from Federal-Mogul.
>
> Their reading of the word 'conceivable' ignores the precise
> holding of *Pacor* where, despite the seemingly broad language
> of the opinion, we found no 'related to' jurisdiction for the
> Higgins lawsuit against Pacor because the outcome of that
> lawsuit could not result 'in even a contingent claim' against the
> debtor (Manville); rather, 'an entirely separate proceeding to
> receive indemnification' would have been required. 743 F.2d
> at 995. The test articulated in *Pacor* for whether a lawsuit could
> 'conceivably' have an effect on the bankruptcy proceeding
> inquires whether the allegedly related lawsuit would affect the
> bankruptcy proceeding without the intervention of yet another
> lawsuit.

300 F.3d at 381-382.

The Court is mindful that the "conceivable effect on the bankruptcy" test for "related

to" jurisdiction could be misconstrued and expanded where every action or claim is related

to every other. "The optimist may argue that anything is 'conceivable,' and the practical

definition of this term of art must be tempered with reasonableness." *Federal-Mogul, Inc.*, 282 B.R. 301,307 (Bankr. D. Del. 2002) (quoting *In re Chargit, Inc.*, 81 B.R. 243, 247 (Bankr. S.D. N.Y. 1987). See also*, In re Asbestos Litigation*, 271 B.R. 118, 124 (S.D. W. Va. 2001) ("[C]ommon sense cautions against an open-ended interpretation of the 'related to' language 'in a universe where everything is related to everything else.'").

While admittedly this Court finds "related to" jurisdiction a "close call," that is not the problem in this case.  The Court finds that the Severed Action continues to be "related to" the Chesapeake bankruptcy because Encino's claim for indemnification is not, in the words of *Pacor*, at best "a mere *precursor to the potential third party claim* for indemnification." (emphasis added). *Pacor*, 743 F.2d at 995.  *Pacor* found that the mere potential for a judgment against the debtor posed by the existence of a suit against the non-debtor was only contingent where a third-party action had not yet been brought and "any material effect on the estate would require yet another lawsuit. *Id.* at 995.  Likewise, in *Federal-Mogul Global* the Court's holding was that it could not exercise even "related to" jurisdiction between non-debtors, *based merely upon the possibility that some defendants might assert indemnity claims* against the debtors.  *Federal-Mogul Global,* 300 F.3d. at 382.  Here, Encino has already invoked its claim of contractual right of indemnification and already filed its Third-Party-Petition.[10]  The Court therefore finds that by the closest of margins there

_____

[10] Plaintiffs rely upon this Court's decision in *In re Imerys Talc America, Inc.,* 2019 WL 2575048 (Bankr. W.D. Okla. 2019) wherein the Court found no "related to" jurisdiction over a products liability action brought against the debtor and a non-debtor. The non–debtor sought to remove the case to bankruptcy court asserting its supply agreements with the debtor contained contractual indemnifications and liability-sharing provisions triggered by the Plaintiffs claims. In *Imerys*, however, the Court specifically found that "without precise evidence as to the applicability of the indemnification or insurance claims and probable necessity of litigation to establish the same, at this time the determination of any insurance or indemnification claims by and between (the

exists "related to" jurisdiction in this Court over Encino's claims against Chesapeake.

### C.  Mandatory Abstention

While this Court has determined that it has (albeit barely) "related to" subject matter jurisdiction over Plaintiffs' claims against Encino, it nevertheless has the power to remand the case back to the state court on either mandatory and/or equitable grounds. Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Mandatory abstention under § 1334(c)(2) pertains only to non-core matters and applies when all of the following elements are present: (1) the motion to abstain was timely; (2) the action is based on a State law or State law cause of action; (3) an action has been commenced in state court; (4) the action can be timely adjudicated in state court; (5 ) the proceeding does not arise under title 11 or arising in a case under title 11 (i.e., is not a "core" proceeding), but is "related to" a case under title 11 and (6) there is no ground for federal jurisdiction other than jurisdiction under § 1334. *In re Telluride Income Growth, L P*, 364 B.R. 390, 398 (10th Cir. BAP 2007); *In re Midgard Corp.*, 204 B.R. 764, 776-78 (10th Cir. BAP 1997). *In re 4 Front Petroleum, Inc.*, 345 B.R. 744, 749 (Bankr. N.D. Okla. 2006).

---

debtor and non-debtor) is too speculative and attenuated for this Court to find 'related to' jurisdiction exists." *Id.* at *5. In the present case, there is evidence in the record to facially support Encino's claim for contractual indemnification from Chesapeake.

Chesapeake argues that the state court action is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B), (C) and (O) (matters concerning the administration of the estate, allowance or disallowance of claims against the estate, counterclaims by the estate and other proceedings affecting the liquidation of the assets of the estate).  While citing § 157(b)(2), Chesapeake does not elaborate as to why or how the *Plaintiffs'* claims, as opposed to Encino's third-party claims, fit within the scope of a core proceeding.

Much of Chesapeake's and Encino's argument against abstention (either mandatory, permissive or equitable) is that the District Court of Beaver County was simply the product of "blatant forum-shopping" on the part of the Plaintiffs [Doc. 32, pg. 2].  This Court is not deaf to that argument, but while that issue may be a factor in determining equitable or permissive abstention as discussed below, it  doesn't involve an element of whether mandatory abstention is appropriate.  For purposes of mandatory abstention, the issue is whether the state court has been commenced and whether it be can be timely adjudicated. The state court case was filed eighteen months prior to Chesapeake's filing of bankruptcy, has been pending for more than two years and is now ready for a scheduling order and to be placed on the trial docket.  The trial judge has made clear that he wishes this matter move forward just against Encino and believes that these plaintiffs have a due process right to have their claims brought before a trier of fact as soon as possible. [Doc. 17, pp.17-18]. The Court finds each of the elements for mandatory abstention are present as to the Plaintiffs' claims against Encino which the Plaintiffs seek to sever from Encino's probable "core" pre-confirmation indemnification claim against Chesapeake.

Chesapeake further argues that the Plaintiffs have submitted to the jurisdiction of the Houston bankruptcy court's jurisdiction by filing Proofs of Claims against Chesapeake

16

in its bankruptcy.  The Plaintiffs did file claims in the bankruptcy court which would be the filer's submission to bankruptcy jurisdiction for resolution of any claim *which it had against the debtor.*  By the filing of proof of claim, a creditor submits to the jurisdiction of the bankruptcy court "especially with respect to the very subject matter of their claims." *Lagenkamp v. C.A. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330 (1990).  Plaintiffs have no claims against Chesapeake in the Severed Action, nor are they asserting any claims in the Chesapeake bankruptcy.[11]  If the Plaintiffs were attempting to assert claims against Chesapeake in state court their withdrawal of the Proofs of Claims would be ineffective to defeat their submission to the jurisdiction of the bankruptcy court, but, as has been repeatedly stated, the Plaintiffs have no state court claims against Chesapeake.

### D. Permissive Abstention and Equitable Remand

Even if the Court had not found Plaintiffs' claims against Encino were subject to mandatory abstention, it also finds that such claims should not be heard in this Court under the doctrines of permissible abstention or equitable remand.

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides, in relevant part:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or

---

[11] In a hearing held in the Chesapeake bankruptcy proceedings in Texas on May 11, 2011, Plaintiff's counsel agreed with Judge David Jones' statement that their "proofs of claim should simply be disallowed, and the litigation that was severed off with Chesapeake in it should be dismissed with prejudice." It is anticipated that withdrawal of all claims against Chesapeake will be formalized pursuant to Fed. R. Bankr. P. 3006 and Plaintiffs' dismissal with prejudice of the state court claims pursuant to the bankruptcy discharge injunction.  [Doc. 48, pg. 21].  On May 20, 2021, Chesapeake advised this Court that "consistent with the guidance from the Houston Bankruptcy Court" it had filed objections to Plaintiff's proofs of claim (already withdrawn) seeking "orders from the Houston Bankruptcy Court to resolve Plaintiff's claims, and disallow each such claim on the basis that Chesapeake is not liable to the plaintiffs." [Doc 49].

respect for State law, from abstaining from hearing a particular
proceeding arising under title 11 or arising in or related to a
case under title 11.

"Equitable remand" is found in the bankruptcy removal statute under which
Chesapeake has removed the action to this Court. Title 28 U.S.C. § 1452(b), which
provides that "[t]he court to which such claim or cause of action is removed may remand
such claim or cause of action on *any equitable ground*." (Emphasis added). The standards
used to determine whether equitable remand is warranted under 28 U.S.C. § 1452(b) are
virtually identical to those used to determine whether permissive abstention is merited
under 28 U.S.C. § 1334(c)(1) and include the following:

> 1.  the effect of remand on the efficient administration of the
> estate;
>
> 2.  the extent to which state law issues predominate over
> bankruptcy issues;
>
> 3.  the difficult or unsettled nature of the applicable law;
>
> 4.  the presence of a related proceeding commenced in state
> court or other non-bankruptcy court;
>
> 5.  the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
>
> 6.  the degree of relatedness of the proceeding to the
> bankruptcy case;
>
> 7.  the substance rather than the form of an asserted "core"
> proceeding;
>
> 8.  the feasibility of severing state law claims from core
> bankruptcy matters;
>
> 9.  the burden on the bankruptcy court's docket;
>
> 10. the likelihood that the proceeding involves forum shopping;

18

11. the existence of a right to jury trial; and

12. the presence of non-debtor parties.

*In re Oakwood Acceptance Corporation v. Tsinigini,* 308 B.R. 81, 87-88 (Bankr. D. N.M. 2004) (citing *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 383-84 (Bankr. E.D. Ark. 2003)); *Ni Fuel Co, Inc v. Jackson*, 257 B.R. 600, 613 (N.D. Okla. 2000).

Not all the factors need to weigh in favor of the abstention in order to be appropriate, nor is any single factor of more importance than the others. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19, 96 S.Ct. 1236 (1976); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131,152 (Bankr. S.D. N.Y. 2010). "Because Section 1452(b) affords 'an unusually broad grant of authority,' any one of the relevant factors may provide a sufficient basis for equitable remand." *Stichting Pensioenfonds ABP, v. Countrywide Financial Corp.*, 447 B.R. 302, 311 (C.D. Cal. 2010).

The Court, in considering these factors and how they apply to this case, finds that:

1. The Court does not believe that remanding Plaintiffs' claims against Encino to the State Court would affect the "efficient administration" of the Chesapeake bankruptcy. The Chesapeake Plan of Reorganization was confirmed in January of this year. As discussed below, the Court is going to retain jurisdiction of Encino's claims against Chesapeake, sever those claims from Plaintiffs' claims against Encino and transfer the claims against Chesapeake to the bankruptcy court in Houston. Any claim against Chesapeake will be heard where it should be, in bankruptcy court. This factor supports remand of Plaintiffs' claims (as well as transfer of Encino's claims against Chesapeake to Houston).

2. The parties are in agreement that state law, probably that of Ohio as to the

Plaintiffs' claims and Texas law with regard to Encino's indemnification claims, controls the rights of the parties. The State Court Judge has already stated that he is fully confident of being competent to apply Ohio law. As to the indemnification claims between Encino and Chesapeake, they have entered into agreements with forum selection clauses making Texas law applicable to their respective rights. This Court is severing and transferring those claims to the Texas bankruptcy court. This factor favors remand of Plaintiffs' claims.

3. The Original State Court action naming both Encino and Chesapeake as defendants was commenced first, prior to Chesapeake's bankruptcy. The Severed Action which dropped Chesapeake as a defendant was initiated after the bankruptcy. It was Encino which brought Chesapeake into the Severed Action. The Court sees the issue of the pre-bankruptcy initiation of the proceeding concerning Plaintiffs' Claims as a factor which favors remand.

4. The Court has found, again barely, that there is "related to" jurisdiction which would normally be a factor favoring the bankruptcy court's retention of the case and deny remand. In the present case, this Court's retention of jurisdiction over Encino's claims against Chesapeake ameliorates this factor.

5. The Court has already found that for jurisdictional purposes Plaintiffs' claims are "related to" Encino's claims against Chesapeake. For practical litigation purposes, however, there is no doubt that Encino's claims against Chesapeake should be tried separately and in a more proper and convenient forum than Beaver County, Oklahoma. Thus, the Court finds that the factor of "degree of relatedness" between Plaintiffs' claims and the Chesapeake bankruptcy case is a factor militating in favor of remand of Plaintiffs' claims against Encino.

20

6.   The factor of "feasibility of severing state law claims" is one of the strongest factors militating in favor of remand and, as discussed below, the Court has done exactly that.  Plaintiffs' claims against Encino will be remanded back to State Court for trial, and both Encino and Chesapeake can litigate any indemnification claims between themselves in the bankruptcy forum which they have contractually selected and where Chesapeake's bankruptcy is proceeding.

7.   In this case, perhaps the most intriguing, though certainly not determinative, factor is "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties."  Plaintiffs assert that "this is the clearest factor in favor of remand."[Doc.16, pg. 24].   As referenced in the first sentence of this Opinion, Chesapeake or Encino have fought to have the Original Action removed to other jurisdictions or another venue within the state on jurisdictional or forum *non conveniens* grounds, and Encino has sought extraordinary relief from the Oklahoma Supreme Court to prevent the State Court from exercising personal jurisdiction over it.  The Plaintiffs infer that these and other matters or undertaken to delay the state court proceeding until Chesapeake filed bankruptcy.  On the other hand, while Chesapeake is an Oklahoma Corporation, the selection of Beaver County, Oklahoma, as the forum for Ohio Plaintiffs' claims based on applicable Ohio law pertaining to Leases of Ohio property brought in a county 200 miles from Chesapeake's Oklahoma City headquarters is, to put it mildly, intriguing.  Chesapeake accuses the Plaintiffs of "blatant forum shopping since the outset" of the litigation.[12]  Under the circumstances, the Court finds the form-shopping factor to be

---

[12] The Court has read with interest the 112 page transcript of the State Court's hearing of April 23, 2019, primarily concerning the jurisdictional and forum *non conveniens* arguments made

neutral.

8.  The Plaintiffs have not requested a jury trial.  An examination of the record shows that from the outset this was going to be a matter tried to the bench. This factor militates against remand.

9.  The only claim asserted by the Plaintiffs in the Severed Action is against non-debtor Encino.  The factor of "the presence of a proceeding between non-debtor parties" weighs in favor of remand.

The Court concludes that on balance, the factors determining equitable abstention of only Plaintiffs' claims against Encino weigh in favor of abstention and remand.

### E.  Severence and Transfer of Encino's Indemnification Claims Against Chesapeake

Part of the Plaintiffs' Motion is the alternative request to sever Encino's third-party indemnification claim against Chesapeake and deal with it in the Bankruptcy Court.  This Court's ability to sever the action is, of course, dependent on whether it has subject matter jurisdiction.  The Court has already found that it does have "related to" jurisdiction.  In their Motion for severance,  Plaintiffs rely upon Fed.R.Civ.P. 14 entitled,"Third-Party Practice," made applicable to this action by Fed.R.Bankr.P. 7014.  Rule 14(a)(4) provides that "Any party may move to strike the third-party claim, to sever it, or to try it separately."   In deciding whether to sever a claim many bankruptcy courts also rely upon Fed.R.Bankr.P. 7021 which provides that, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The Court may also sever any claim against a party." See e.g., *In re Beaulieu Group, LLC*, 2020 WL 6930778 (Bankr. N.D. Ga. 2020); *In re LMI Legacy*

---

by all counsel.

*Holdings, Inc.,* 553 B.R. 235, 251-52 (Bankr. D. Del. 2016);  *Lustgraaf v. Behrens (In re Green)*, 2012 WL 5050594 (Bankr. D. Neb. 2012).   This rule gives the court broad discretion to sever separate and discrete claims.  *McDowell Welding & Pipefitting, Inc. v. U. S. Gypsum Co.,* 285 B.R. 460, 471 (D. Ore. 2002); *Green*, supra at *3.

In exercising the court's discretion to sever, the factors to be considered include: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if is not granted. *Id*. at *2; *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).

In the present case, Encino's third-party petition for indemnification, is necessarily dependent on the outcome of, but is not an integral part of, Plaintiffs' claims against Encino.   The indemnification issues are separate and discrete from Plaintiffs' claims against Encino.  The Plaintiffs' claims against Encino are based upon the Leases assigned to Encino.  Encino's indemnification claims against Chesapeake are based on separate agreements.   The debtor is not an indispensable party to the primary litigation. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3rd Cir. 1993) (holding that a third-party sued for contribution is not a necessary party without whom complete relief is unavailable). See, *Official Committee of Unsecured Creditors v. Shapiro,* 2000 WL 32072 (E.D. Pa. 2000) (calling severance of claims for contribution from the underlying litigation "justified [and] feasible").   Moreover, there is no prejudice to Chesapeake or

Encino in severing the claims as a predicate for the transfer because they have both argued that the Houston bankruptcy court was the proper forum to hear all the claims in the case. The Court finds that Encino's third-party claim against Chesapeake should be severed from the Plaintiffs' claim against Encino.

### F. Chesapeake's Motion to Transfer

The Court has jurisdiction over Chesapeake's Motion to Transfer venue, which is a core proceeding. *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 767 (Bankr. N.D. Ill. 1993) (holding that "motions for change of venue, abstention, and remand are core proceedings under 28 U.S.C. § 157(b)(2)(A)"). The Court's analysis begins with the statutory provisions that govern transfer of venue. Section 1412 is the provision dealing with a change of venue in a case or proceeding arising under title 11, while § 1404(a) is the general change of venue statute applicable to all civil cases. Chesapeake seeks transfer under either/or both statutes. While case law indicates that in situations, like here, where the matter is in bankruptcy court by virtue of "related to" jurisdiction the general venue statute, § 1404(a) should apply. *See e.g.  Ni Fuel* , 257 B.R. at 622-23; *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.,* 408 B.R. 90, 97 (Bankr. S.D. Tex. 2009) ("Section 1412 specifically excludes any references to 'related to' proceedings." (*quoting Searcy v. Knostman,* 155 B.R. 699, 707 (S.D. Miss.1993)). However, the analysis under either section is essentially the same, turning on the same issues of "the interest of justice" and "the convenience of the parties," except that § 1412 does not require that the action could have been brought in the transferee district. See e.g. *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1390-91 (2d Cir. 1990); *Thomson McKinnon Securities Inc. v. White (In re*

24

*Thomson McKinnon Securities Inc.)*, 126 B.R. 833, 834-35 (Bankr. S.D. N.Y. 1991).

With regard to issues of change of venue, the bankruptcy court has broad discretion. The court should consider all relevant factors and exercise discretion to determine on an "individualized, case-by-case" basis, whether convenience and fairness considerations weigh in favor of the transfer. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31, 108 S.Ct. 2239 (1988); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). No single factor carries dispositive weight. *In re Volkswagen of America Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). The movant, here Chesapeake, bears the burden of proof and must establish "good cause" for transferring venue. *Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). To establish "good cause," the movant must "clearly demonstrate that a transfer is '[for] the convenience of the parties and witnesses, in the interest of justice.'" *Id.*

Courts consider both private and public interest factors when determining whether transferring venue is for the convenience of parties and witnesses and the interest of justice. *Longhorn*, 408 B.R. at 98. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance of willing witnesses; and (4) all other practical problems that make trial of the case easy, expeditious and inexpensive. *Id.*; *In re Volkswagen of America, Inc.* 545 F.3d 304, 315 (5th Cir. 2008).

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws [or in] the application of foreign law. *Id.*

To begin, in the present case, the Assignment, Bill of Sale and Conveyance between Encino and Chesapeake which provides for indemnification also contains a forum selection clause requiring suit between the parties to be brought in the Federal District Court in Harris County, Texas. [Doc. 33, p. 34].  The general rule is that a forum selection clause is *prima facie* valid and should be enforced absent a strong showing that it would be unreasonable under the circumstances.  *Atlantic Marine Constr. Co., Inc. v. U. S. District Court for the Western District of Texas*, 571 U.S. 49, 62, 134 S.Ct. 568 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907 (1972).

In addition to the forum selection clause, the Court finds that all but possibly one of both the private and public interest factors weigh compellingly in favor of the transfer of the severed claims between Chesapeake and Encino to the Bankruptcy Court in Houston.  The only factor possibly weighing against transfer is the congestion of the Houston Bankruptcy Court's docket as argued by the Plaintiffs.  That single factor does not outweigh all of the factors overwhelmingly in favor of transfer when Encino and Chesapeake have been clamoring for this dispute to be resolved in Houston.  Furthermore, issues have been raised in the Houston Bankruptcy Court regarding the possible executory nature of the contracts containing indemnification provisions.  That issue can only be adjudicated in that

Court, not here.[13]   The Court therefore finds that the severed third-party claim for indemnification brought by Encino against Chesapeake is hereby transferred to the United States District Court for the Southern District of Texas for reference to the Bankruptcy Court there.

### IV. Conclusion

For the reasons stated above, *Plaintiffs' Combined Motion to Abstain, Sever, and Remand* [Doc. 16] is hereby **Granted in Part and Denied in Part**, and Chesapeake's *Third-Party Defendants' Amended Motion for Entry of an Order Transferring Venue to the United States Bankruptcy Court for the Southern District of Texas* [Doc. 15] is **Granted in Part and Denied in Part**.  Accordingly,

**IT IS ORDERED** that the claims of Plaintiffs, CTF, Ltd.; Ronald E. and Judy L. Carlton; Richard A. and Catherine A. Carlton; Bruce D. and Catherine B. Carlton; and Lawrence J. Fechko against Defendants, Encino Energy, L.L.C. and Encino Acquisition Partners, L.L.C., are hereby severed from the claims of Third-Party Plaintiffs Encino Energy, L.L.C., and Encino Acquisition Partners, L.L.C., against Third-Party Defendants Chesapeake Exploration, L.L.C., *et al.*

**IT IS FURTHER ORDERED**  that the claims of Third-Party Plaintiffs Encino Energy, L.L.C. and Encino Acquisition Partners, L.L.C. against Third-Party Defendants Chesapeake Exploration, L.L.C., *et al.*, are hereby transferred to the United States District Court for the Southern District of Texas, for referral to the Bankruptcy Court administering *In Re Chesapeake Energy Corporation,* Case No. 20-33233.

**IT IS FURTHER ORDERED** that the claims of Plaintiffs, CTF, Ltd.; Ronald E. and

---

[13] See, Transcript of May 11, 2021 hearing, Doc. 48, pg 23-25.

27

Judy L. Carlton; Richard A. and Catherine A. Carlton; Bruce D. and Catherine B. Carlton; and Lawrence J. Fechko, against Defendants, Encino Energy, L.L.C. and Encino Acquisition Partners, L.L.C. are hereby remanded to the District Court for Beaver County, Oklahoma, Case No. CJ-2018-00026-A.

# # #